UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

CASSANDRA DEAVERS,

                      Plaintiff,

v.                                             Civil Action No. 3:13-CV-821

KATHY DIGGINS, et al.,

                      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Kathy Diggins' Motion to Dismiss Amended Complaint ("Motion") (ECF No. 33), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff did not file a Memorandum in Opposition and neither party has requested a hearing on the matter. For the reasons set forth below, the Motion is GRANTED with respect to paragraphs 47 and 48 of the Amended Complaint.

## I. BACKGROUND

### a. *Factual Background*

Cassandra Deavers was forty-eight years old on December 8, 2011, when she was sentenced to serve thirty days' incarceration in the Rappahannock Regional Jail ("Jail") for her conviction of Driving Under the Influence, second offense. At the time, Deavers was under the treatment of a physician for a prior pulmonary embolism and had been prescribed a daily dose of the blood thinner warfarin.[1] On December 1, 2011, seven days prior to her sentencing, Deavers' primary care physician increased her dosage of warfarin to twelve milligrams per day and had ordered that her International Normalized Ratio and Prothrombin Time ("INR/PT")

---

[1] Warfarin is the generic name for the brand-name drug Coumadin. The Complaint and the documents attached thereto use warfarin and Coumadin interchangeably. For the sake of ease, the Court refers to the drug throughout this Memorandum Order by its generic name, warfarin.

1

levels be checked on a weekly basis. An individual's INR/PT levels are indications of the time required for a patient's blood to clot and, therefore, are important indicators of whether the patient's warfarin dose is too high, putting her at risk for internal bleeding, or too low, putting her at risk for embolism.

After being sentenced on December 8, 2011, Deavers was transferred to the Jail to begin her incarceration. Deavers' personal property was inventoried, and the Jail medical staff performed a physical examination of Deavers. During these procedures, Deavers informed RRJA medical staff that she was prescribed warfarin, which was to be taken daily, and that her INR/PT levels were to be checked weekly. The RRJA medical staff also noted that Deavers was allergic to aspirin.

On December 10, 2011, a nurse employed in the medical staff took Plaintiff's blood for the intent of obtaining her INR/PT levels. The results of this first test showed that Deavers' INR/PT levels were too high, putting her at risk for uncontrolled bleeding and indicating that her dose of warfarin should have been decreased.[2] The Amended Complaint alleges that the Defendants "failed to check on the test results, and failed to take the necessary therapeutic steps to correct" Deavers' out-of-range INR/PT levels. (Am. Compl. ¶ 25.)

A Physician Orders sheet signed by an unidentified nurse indicates that on December 12, 2011, an unidentified physician ordered Deavers' INR/PT levels to be checked again in two weeks. The same nurse never attempted to follow up on the results of her first blood test. On that same day, Deavers submitted a written inquiry to the RRJ staff inquiring about her test results, but was not given any information.

On December 21, 2011, Deavers completed a medical request form ("First Medical Request") complaining of a headache lasting for the previous three days. Deavers indicated that medical request forms had not been available for the prior three days. The following day, on

---

[2] The Complaint alleges that "normal" INR levels range from 0.8 to 1.2, but that Deavers' INR level was 1.8; and that normal PT levels range from 9.1 and 12.0, but that Deavers' PT level was 19.5.

December 22, 2011, Deavers had a medical examination at which time it was noted that a hard, red bump had appeared on her buttock two days prior. Defendant Dahlberg, not having examined Deavers, signed off on a physician order sheet diagnosing her with Methicillin-resistant Staphylococcus aureus ("MRSA"). No one addressed the fact that severe headaches are a symptom of warfarin toxicity, and failed to check on the results of her December 8th blood test or otherwise address Deavers' INR/PT levels. Deavers was kept on the same dosage of Warfarin.

On December 31, 2011, Deavers had her blood drawn by Defendant Diggins for a second INR/PT test. Deavers asked Diggins what the results of her first test were and Diggins responded, "No news is good news." That same day, Deavers completed another medical request form ("Second Medical Request"). The Second Medical Request indicated that Deavers had bruising on the backs of both legs and was experiencing significant pain as a result.

On January 1, 2012, Deavers completed yet another medical request form ("Third Medical Request") complaining of a stomach ache lasting for two days and irregular bowel movements since her incarceration began. That same day, Deavers was given a physical exam by Diggins. Despite knowing that Deavers was taking warfarin, Diggins took no action beyond prescribing Deavers Tylenol for her pain complaints. Diggins did not check the results of either of Deavers' INR/PT tests and did not refer Deavers for additional care.

On January 4, 2012, Deavers' blood was redrawn for an INR/PT test. By this time, Deavers still had not learned the results of her initial lab work. At 9:00 p.m. that evening, Deavers began bleeding profusely from the needle site. Deavers continued to bleed out in her cell throughout the night. Finally, at 5:00 a.m., when the cell doors were unlocked, Deavers attempted to leave, but immediately lost consciousness, fell, and hit her head.

Deavers was transported to Mary Washington Hospital, where she was diagnosed with a large retroperitoneal hematoma "most likely secondary to Coumadin (Warfarin) toxicity," acute blood loss, anemia, and dehydration secondary to blood loss. Deavers remained in the hospital for five days, receiving multiple blood transfusions and placement of an inferior vena cava filter.

Deavers was released back to the Jail on January 12, 2012, and was released from the Jail on January 15, 2012.

### B. *Procedural Background*

On December 10, 2013, Deavers filed suit against Defendants Rappahannock Regional Jail Authority ("RRJA"), Superintendent Joseph Higgs, Jail Licensed Practical Nurses Nasmh, Diggins, and Canzon, as well as the Fredericksburg Emergency Medical Alliance, Incorporated ("FEMA"), three Jane Doe Defendants and eight John Doe Defendants. Count One of the Complaint—which relates generally to the Jail conditions and specifically to the events of January 4, 2012—raises a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging a supervisory liability claim against Higgs and a deliberate indifference claim against all other defendants. Count Two of the Complaint raises a Section 1983 claim against the nursing staff of the Jail, alleging that they were deliberately indifferent to Deavers' serious medical condition by failing to monitor her INR/PT test results or to identify the symptoms of warfarin toxicity. Count Three of the Complaint raises a common law negligence claim against Dr. Dalberg and FEMA for Dr. Dalberg's treatment of Deavers.

Defendants RRJA, Higgs, Diggins and Canzon filed a Motion to Dismiss on April 7, 2014 ("RRJA Motion") (ECF No. 12) and Defendant Dalberg filed a Motion to Dismiss on April 17, 2014 ("Dalberg Motion") (ECF No. 17). A hearing was held on Monday, June 16, 2014 and a subsequent order and memorandum opinion were issued, which GRANTED in part the RRJA Motion with respect to RRJA and Higgs, and DENIED in part as to Diggins (ECF No. 25). The Dalberg Motion was also DENIED. Additionally, the opinion GRANTED Deavers leave to amend her Complaint as to RRJA and Higgs.

In accordance with the opinion, Deavers filed an amended complaint on August 25, 2014 (ECF No. 32). The amended two-count complaint alleges a Section 1983 claim against Diggins, alleging that Diggins was deliberately indifferent to Deavers' critical medical needs, as well as a negligence claim against Defendants FEMA and Dalberg. Diggins subsequently filed a Motion to

4

Dismiss for Failure to State a Claim on September 25, 2014 (ECF No. 33). In her present motion, Diggins moves the Court to dismiss Count I of the Amended Complaint to the extent that it alleges that Diggins failed to recognize symptoms of warfarin toxicity in the Plaintiff.

## II. **LEGAL STANDARD**

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. **DISCUSSION**

    a. *Diggins' Argument*

Diggins requests the Court to dismiss Count I of the Amended Complaint to the extent it alleges that she failed to recognize symptoms of warfarin toxicity in the Plaintiff, and also instruct Deavers to file a Second Amended Complaint striking the identified language. Diggins argues that the Court previously held that Deavers failed to state a claim on the warfarin toxicity claims. However, Deavers' Amended Complaint, specifically paragraphs 47 and 48, still reference several elements of the dismissed toxicity claims.

### b. *Analysis*

This Court's memorandum opinion on July 3, 2014 (ECF No. 25) denied the original Motion to Dismiss with respect to Diggins. However, the Court distinguished two separate claims alleged by Deavers against Diggins, noting the fact that it was liberally construing the Complaint for the "sake of completeness." Mem. Op. 10 n.7, July 3, 2014 (ECF No. 25). First, the Court found that the Complaint alleges that Diggins and the unnamed medical staff defendants (collectively, "Nurse Defendants") failed to appropriately monitor Deavers' INR/PT levels and failed to check the results of the INR/PT tests that were actually performed. The Court held that this first claim was sufficient to survive a motion to dismiss. Second, the Court found that the Complaint alleged that the Nurse Defendants were deliberately indifferent for failing to diagnose warfarin toxicity or to refer Deavers for higher levels of medical care. The Court treated the "warfarin toxicity claim" as a stand-alone claim.[3] *Id.* The Court held that this second claim fails to state a claim for deliberate indifference. Specifically, the Court held that the Complaint does not allege that the Nurse Defendants ever realized the import of Deavers' symptoms; rather, the Complaint only alleges "constructive knowledge" on the part of the Nurse Defendants. *Id.* at 12–13. "Therefore, Deavers's claim based on the Nurse Defendants' failure to diagnose Deavers's warfarin toxicity fails as a matter of law." *Id.* at 13.

Like the original Complaint, the Court construes the Amended Complaint as alleging two

---

[3] This claim is referenced in Paragraphs 67 and 68 of the original Complaint. These paragraphs are nearly identical to Paragraphs 47 and 48 in the Amended Complaint.

6

separate claims, including the same claim for deliberate indifference in failing to diagnose warfarin toxicity. *See* Am. Compl. ¶¶ 47, 48. A claim of deliberate indifferences requires that a defendant: (1) know facts indicating that a substantial risk to the inmate existed; (2) conclude that the inmate was at risk; and (3) fail to make efforts to mitigate that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, the Amended Complaint's allegation that Deavers' symptoms "should have alerted" the Nurse Defendants to her plight or "should undoubtedly have" put Defendants on notice does not state a claim of deliberate indifference. *See* Am. Compl. ¶¶ 30, 33. Because of Deavers' consistent use of constructive knowledge language, the Court cannot read the Amended Complaint as alleging that the Nurse Defendants ever concluded that Deavers was suffering from warfarin toxicity. Rather, like the original complaint, the Amended complaint fails to state a claim of deliberate indifference. Therefore, Deavers' claim based on Diggins' failure to diagnose Deavers' warfarin toxicity fails as a matter of law.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Diggins' Motion is GRANTED with respect to paragraphs 47 and 48 of the Amended Complaint. Deavers is GRANTED leave to amend her Amended Complaint in order to strike the language in the identified paragraphs.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __6th__ day of October 2014.