UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CASSANDRA DEAVERS,<br><br>         Plaintiff,<br><br>v.<br><br>KATHY DIGGINS, *et al.*,<br><br>         Defendants. | Civil Action No. 3:13-CV-821 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Kathy Diggins's Motion for Summary Judgment ("Summary Judgment Motion") (ECF No. 57), and a Motion to Order Finding Lack of Federal Court Jurisdiction and Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) by Defendant Rickard K. Dalberg, M.D. ("Dalberg's Motion") (ECF No. 59). Additionally before the Court is Rickard K. Dalberg, M.D.'s Motion and Notice of Waiver of Statute of Limitations in Action Filed Against Him by Cassandra Deavers in Stafford County Circuit Court and Reasons in Support of His Motion to Dismiss for Lack of Subject Matter Jurisdiction ("SOL Waiver Motion") (ECF No. 68). For the reasons set forth below, the Summary Judgment Motion, Dalberg's Motion and the SOL Waiver Motion are hereby GRANTED.

### I.   BACKGROUND

  a.   *Factual Background*

Cassandra Deavers was forty-eight years old on December 8, 2011, when she was sentenced to serve thirty days' incarceration in the Rappahannock Regional Jail ("Jail") for her conviction of Driving Under the Influence, second offense. At the time, Deavers was under the treatment of a physician for a prior pulmonary embolism and had been prescribed a daily dose

1

of the blood thinner warfarin.[1] On December 1, 2011, seven days prior to her sentencing, Deavers' primary care physician increased her dosage of warfarin to twelve milligrams per day and had ordered that her International Normalized Ratio and Prothrombin Time ("INR/PT") levels be checked on a weekly basis. An individual's INR/PT levels are indications of the time required for a patient's blood to clot and, therefore, are important indicators of whether the patient's warfarin dose is too high, putting her at risk for internal bleeding, or too low, putting her at risk for embolism.

After being sentenced on December 8, 2011, Deavers was transferred to the Jail to begin her incarceration. Deavers' personal property was inventoried, and the Jail medical staff performed a physical examination of Deavers. During these procedures, Deavers informed the Jail medical staff that she was prescribed warfarin, which was to be taken daily, and that her INR/PT levels were to be checked weekly. The medical staff also noted that Deavers was allergic to aspirin.

On December 10, 2011, a nurse employed in the Jail took Plaintiff's blood for the intent of obtaining her INR/PT levels. The results of this first test showed that Deavers' INR/PT levels were too high, putting her at risk for uncontrolled bleeding and indicating that her dose of warfarin should have been decreased.[2] The Amended Complaint alleges that the Defendants "failed to check on the test results, and failed to take the necessary therapeutic steps to correct" Deavers' out-of-range INR/PT levels. (Third Am. Compl. ¶ 25.)

On December 12, 2011, a Physician Orders sheet signed by Licensed Practical Nurse ("LPN") Kathy Diggins ("Diggins") indicates that Deavers' INR/PT levels were scheduled to be checked again in two weeks. The same nurse never attempted to follow up on the results of her

---

[1] Warfarin is the generic name for the brand-name drug Coumadin. The Complaint and the documents attached thereto use warfarin and Coumadin interchangeably. For the sake of ease, the Court refers to the drug throughout this Memorandum Order by its generic name, warfarin.

[2] The Complaint alleges that "normal" INR levels range from 0.8 to 1.2, but that Deavers' INR level was 1.8; and that normal PT levels range from 9.1 and 12.0, but that Deavers' PT level was 19.5.

2

first blood test. On that same day, Deavers submitted a written inquiry to the Jail staff inquiring about her test results, but was not given any information.

On December 21, 2011, Deavers completed a medical request form ("First Medical Request") complaining of a headache lasting for the previous three days. Deavers indicated that medical request forms had not been available for the prior three days. The following day, on December 22, 2011, Deavers had a medical examination at which time it was noted that a hard, red bump had appeared on her buttock two days prior. Defendant Dahlberg, not having examined Deavers, signed off on a physician order sheet diagnosing her with Methicillin-resistant Staphylococcus aureus ("MRSA"). No one addressed the fact that severe headaches are a symptom of warfarin toxicity, and failed to check on the results of her December 8th blood test or otherwise address Deavers' INR/PT levels. Deavers was kept on the same dosage of Warfarin.

On December 31, 2011, Deavers had her blood drawn by Defendant Diggins for a second INR/PT test. Deavers asked Diggins what the results of her first test were and Diggins responded, "No news is good news." That same day, Deavers completed another medical request form ("Second Medical Request"). The Second Medical Request indicated that Deavers had bruising on the backs of both legs and was experiencing significant pain as a result.

On January 1, 2012, Deavers completed yet another medical request form ("Third Medical Request") complaining of a stomach ache lasting for two days and irregular bowel movements since her incarceration began. That same day, Deavers was given a physical exam by Diggins. Despite knowing that Deavers was taking warfarin, Diggins took no action beyond prescribing Deavers Tylenol for her pain complaints. Diggins did not check the results of either of Deavers' INR/PT tests and did not refer Deavers for additional care.

On January 4, 2012, Deavers' blood was redrawn for an INR/PT test by Diggins. By this time, Deavers still had not learned the results of her initial lab work. At 9:00 p.m. that evening, Deavers began bleeding profusely from the needle site. Deavers continued to bleed out in her

3

cell throughout the night. Finally, at 5:00 a.m., when the cell doors were unlocked, Deavers attempted to leave, but immediately lost consciousness, fell and hit her head.

Deavers was transported to Mary Washington Hospital, where she was diagnosed with a large retroperitoneal hematoma "most likely secondary to Coumadin (Warfarin) toxicity," acute blood loss, anemia, and dehydration secondary to blood loss. Deavers remained in the hospital for five days, receiving multiple blood transfusions and placement of an inferior vena cava filter. Deavers was released back to the Jail on January 12, 2012, and was released from the Jail on January 15, 2012.

### b. *Procedural Background*

On December 10, 2013, Deavers filed suit against Defendants Rappahannock Regional Jail Authority ("RRJA"), Superintendent Joseph Higgs, Jail Licensed Practical Nurses Nasmh, Diggins, and Canzon, as well as the Fredericksburg Emergency Medical Alliance, Incorporated ("FEMA"), three Jane Doe Defendants and eight John Doe Defendants, and Dr. Rickard K. Dalberg ("Dalberg"). As the result of multiple motions to dismiss and later consent orders, Plaintiff was allowed to amend her Complaint on three different occasions. Plaintiff's third Amended Complaint now alleges two counts–(1) a § 1983 claim for violations of the Eighth and Fourteenth Amendments against Diggins; and (2) a negligence claim against Dalberg. These remaining Defendants filed their present Motions on January 23, 2015. After the issues were fully briefed, the Court held a hearing on February 13, 2015.

## II. LEGAL STANDARD

### a. *Motion for Summary Judgment*

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*,

4

999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted). However, if the court finds that there *is* a genuine issue of material fact, the motion must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation marks omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

A district court must "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (internal quotation marks and citations omitted). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 at 249–50.

b. ***Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)***

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action. The Court must dismiss the action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Under Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction exists in federal court. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The district court must then weigh the evidence to determine whether

jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In its determination, a court should grant a Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

### III. DISCUSSION

#### a. Summary Judgment Motion

The Eighth Amendment prohibits cruel and unusual punishment and prohibits prison officials from acting with deliberate indifference to a prisoner's serious medical needs. *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013).[3] The Fourth Circuit has stated, "Prisoners are entitled to reasonable medical care [citation omitted]. However, mistreatment or non-treatment must be capable of characterization as 'cruel and unusual punishment' in order to present a colorable claim under § 1983 [citation omitted]. The prisoner's allegations must reach constitutional dimension before a federal court will interfere with the internal operations of a state penal facility [citation omitted]." *Russell v. Sheffer*, 528 F.2d 318, 318–19 (4th Cir. 1975). To reach that constitutional level, a prisoner must establish that "the treatment, or lack thereof, [was] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To successfully allege a claim of deliberate indifference to a serious medical need, a prisoner must satisfy a two-pronged test consisting of an objective element and a subjective element. *See Farmer*, 511 U.S. at 837. First, the plaintiff must allege that he had an "objectively, sufficiently serious" medical condition. *Id.* at 834. Second, he must allege that the prison official actually knew of and disregarded an excessive risk of harm related to the inmate's serious

---

[3] "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citation and internal quotation marks omitted).

medical condition. *Id.* at 837 (rejecting the invitation to adopt an objective test for deliberate indifference). "Actual knowledge or awareness on the part of the [prison official] is essential to proof of deliberate indifference." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). Stated differently, this second prong of the test requires a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An inadvertent failure to provide adequate medical care or mere negligence will not establish a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *see also Farmer*, 511 U.S. at 835, 836 (stating that "deliberate indifference describes a state of mind more blameworthy than negligence" and equating deliberate indifference to "recklessness").

It is admittedly undisputed that Plaintiff had a serious medical condition. *Farmer*, 511 U.S. at 834.[4] Thus, Defendant's summary judgment is instead premised upon Plaintiff's purported inability to meet the subjective element of a cognizable Eighth Amendment claim.

Here, Plaintiff's Third Amended Complaint states, "Defendant made no attempt, despite the Plaintiff's repeated requests, to document the results of even the first blood test, thus reflecting the most gross deliberate indifference, not only to Plaintiff's medical care, but to her survival." (Third Am. Compl. ¶ 45.) However, even viewed in light most favorable to Plaintiff the record creates no genuine issue of material fact to support Plaintiff's deliberate indifference claim. The Supreme Court has stated that "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845. In other words, even if the prison officials actually knew of a substantial risk to inmate health or safety, they will not be held liable "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Defendant Diggins responded reasonably to Plaintiff's medical condition. As she notes, she was not responsible for evaluating Plaintiff's INR/PTR results. (Def.'s Mem. in Supp. of Summ. J. Ex. 2, at ¶ 5–7.) Rather, the physician's assistant or physician

---

[4] Plaintiff had experienced a pulmonary embolism and was under the care of Dr. Haffizulla, M.D. (Third Am. Compl. ¶¶ 19, 20.) She was prescribed a daily dose of warfarin. (*Id.* ¶ 19.)

was the one with authority to adjust the dose and discuss the results of such testing with Plaintiff. (*Id.* at ¶ 6.) Defendant did draw blood from Plaintiff on December 31, 2011. (*Id.* at ¶ 11.) Lab Corp, however, never processed that December 31 blood sample.[5] Upon learning that such sample was not processed, Defendant took a new sample on January 4, 2012. (*Id.* at ¶12.) With this in mind, there is no evidence to support a finding that Defendant acted with deliberate indifference towards Plaintiff's serious medical condition. At worst, and as admitted by Plaintiff's expert Dr. Terrance L. Baker, (*see* Def.'s Mem. in Supp. of Summ. J. Ex. 1 at 130:7–18), Defendant was merely negligent by failing to document the results of Plaintiff's blood tests. However, negligence does not establish a constitutional violation. *See Estelle*, 429 U.S. at 105–06. Consequently, the Court GRANTS the Summary Judgment Motion.[6]

  b. **Dalberg's Motion**

District courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the federal claim. 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well). But, that being said, "[t]he doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject-matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law

---

[5] Plaintiff submits that Defendant never called Lab Corp to pick up the blood tests.
[6] Defendant Diggins' Summary Judgment Motion also raises the issue of qualified immunity. But because the Court disposes of the Motion based on the deliberate indifference standard, the Court will not address this latter issue.

claims when the federal basis for an action drops away."). Among the factors that inform the Court's discretionary determination are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

Plaintiff's Third Amended Complaint was properly brought before this Court under 28 U.S.C. § 1331, as Plaintiff alleged an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendant Diggins. Count II of Plaintiff's Third Amended Complaint alleged a state law negligence claim against Defendant Dalberg, which was also properly before this Court pursuant to 28 U.S.C. § 1367. Because the Court GRANTED Defendant Diggins' Summary Judgment Motion above, the Court now exercises its discretion in either retaining or dismissing the remaining state law claim against Defendant Dalberg. *See* 28 U.S.C. § 1367(c)(3).

Plaintiff argues that the Court should retain jurisdiction, as "[d]ismissal at this point would . . . serve to immunize Defendant Dalberg from responsibility for his negligence as the statute of limitations has run." (Pl.'s Mem. in Opp. to Def. Dalberg's Mot. to Dismiss for Lack of Jurisdiction at 3.) However, because Defendant Dalberg has now waived any potential statute of limitations defense, (*see* SOL Waiver Mot.), Dalberg's Motion is hereby GRANTED.

## IV.  CONCLUSION

For the foregoing reasons, the Summary Judgment Motion, Dalberg's Motion and the SOL Waiver Motion are GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __18th__ day of February 2015.